# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY MURRAY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAL TERHUNE, et al.,<br><br>　　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　/ | CASE NO. 1:02-CV-5978 AWI-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND DENYING IN PART<br><br>OBJECTIONS DUE IN 30 DAYS<br><br>(Docs. 28 & 29 ) |

I.   Defendant's Motion to Dismiss

　　A.　　Procedural History

Plaintiff Henry Murray ("plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's first amended complaint ("Am. Compl.") filed on April 3, 2003, against defendants Terhune, Lewis, Allen, Wallace, Comaites, and Corley, for allegedly violating plaintiff's Fourteenth and First Amendment Rights. Plaintiff alleges that defendants improperly excluded his property from the prison and then retaliated against him by failing to return the property to his family after he attempted to file a grievance regarding the seizure.

　　On October 13, 2006, all defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). See, Docs. 59-61. Specifically, defendants argue that all of plaintiff's claims against all defendants should be dismissed except the retaliation claim against defendant Wallace. Plaintiff did not file an opposition. The court

grants defendants' motion to dismiss in part, and dismisses all claims against all defendants except against defendants Wallace and Corley for the alleged retaliation against plaintiff.

B.      Plaintiff's Amended Complaint

In his amended complaint, plaintiff alleges that shortly after his arrival at Pleasant Valley State Prison (PVSP) in November 2000, he went to obtain his property at receiving and release. See, Am. Compl. para. 12. Officers Corley and Wallace who were assigned to give him his property told him that some of the property was not allowed in the prison. See, Am. Compl. ¶ 13. They informed him that the property could be sent home or donated. See, Am. Compl. ¶ 14. Plaintiff disagreed with the decision. When he asked about the grievance procedure, he alleges that Officer Wallace began to threaten him and Officer Corley took an aggressive posture. See, Am. Compl. ¶ 17. Plaintiff asserts that both the defendants retaliated against him by losing or destroying his property after he requested that it be sent home. See, Am. Compl. ¶ 20.

Plaintiff filed a grievance. See, Am. Compl. ¶ 21-22. Plaintiff alleges he was interviewed by Sgt. Allen at the first level of appeal, who terminated the interview when plaintiff addressed the officer's conduct. See, Am. Compl. ¶ 23-26. Plaintiff was interviewed at the second level of appeal by Sgt. Comaites. Plaintiff alleges that Sgt. Comaites tried to convince him not to pursue the claim. When plaintiff refused, Sgt. Comaites created a CDC-602 and falsely reported that he had investigated the claim. Id. Plaintiff alleges that both Sgt. Comaites and Sgt. Allen entered into a conspiracy with Officers Wallace and Corley. See, Am. Compl. ¶ 24-25, 28. Finally, plaintiff alleges that this is part of a larger policy instituted by defendants Lewis, the warden of PVSP, and defendant Terhune, the director of CDCR at the time, to unlawfully deprive inmates of their property and to punish inmates who attempt post-deprivation relief.

C.      Legal Standard

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In considering a motion to dismiss for failure to state a claim, the Court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's

favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The federal system is one of notice pleading. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Id. at 512. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

D.    Discussion

1) Failure to Exhaust Administrative Remedies

Defendants allege that plaintiff did not name defendants Comaites, Corley, Lewis, or Terhune, nor did he contend that these same defendants retaliated against him in his inmate appeal. Accordingly, the court should dismiss plaintiff's claims against those defendants.

Under the PLRA, an inmate is required to use the administrative process that the state

provides in order to exhaust his administrative remedies. See Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.2005). In preparing an administrative appeal, California regulations provide that "[t]he appellant shall use a CDC Form 602 (rev. 12-87), Inmate/Parolee Appeal Form, to describe the problem and action requested." See Cal.Code Regs. Title 15, § 3084.2(a). The applicable CDC form does not require identification of any specific persons. Plaintiff completed the form and described the problem and the action requested. "[In] doing so, he availed himself of the administrative process the state gave him. The PLRA does not require more." Butler, 397 F.3d at 1183.

Satisfaction of the exhaustion requirement does not require that the inmate draft his grievance with the precision of an attorney, setting forth every fact, identifying every defendant by name, and identifying which constitutional rights were violated by which actions or omissions. Satisfaction of the exhaustion requirement does require that the inmate, in his grievance, place prison personnel on fair notice as to the events that subsequently give rise to suit. This appeal did place prison personnel on notice of plaintiff's allegations.

Further, although he is not required to do so, plaintiff's CDC Form 602 filed April 11, 2001, does reference Officer Wallace. See, Exhibit A, Am. Compl. Similarly, plaintiff also references Officer Corely in a letter to inmate appeals dated April 3, 2001. See, Exhibit B, Am. Compl. Additionally, both Officer Wallace and Officer Corely are referenced in the first level appeal response dated December 21, 2000. See, Exhibit E, Am. Compl.

It is clear that defendants were aware that both Officers Corley and Wallce were present when plaintiff's property was seized. In the amended complaint, plaintiff alleges that both defendants have retaliated against him. Accordingly, the defendants' motion to dismiss on this basis is denied.

2. Confiscation of Plaintiff's Property by Officers Corley and Wallace

An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or

4

statutes. Logan v. Zimmerman Brush Co., 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987). Defendants argue that plaintiff cannot show that the operations procedure under which his property was confiscated, or the regulation triggering it, were not reasonably related to legitimate penological interests.[1]  The court agrees.

Plaintiff alleges that Officers Corley and Wallace wrongfully confiscated a Sony radio/CD/cassette player/recorder, dark gray sweatshirt, colored boxer, insulated cup, Hot Pot, green and white tennis shoes, an altered headphone extension, and an A/C adapter. See, Am. Compl. at Ex. C1.  When Plaintiff's property as confiscated, California Code of Regulations Title 15, section 3190 (2000) provided that wardens and superintendents may establish a list of personal property items, and the maximum amount of such items, an inmate may have in his possession. Operations Procedure No 47 governed the kind of personal property inmates at PVSP could possess. Section VI. D.6(d) of OP 47 provides that only radios/tape/CD players with no recording capabilities could be possessed. Similarly section VI J. lists several items that are considered to be prohibited contraband. This list included items used to promote or identify gang membership. Section VI.E.3(b)(1) allows for the confiscation of property that has been altered. All of the items fell within these categories prohibited by OP 47.

In analyzing the legitimacy of authorized deprivations of property, the court utilizes the factors set forth in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987): 1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; 2) whether the prisoners retain alternative means of exercising the right at

---

[1] Defendants have made a motion that the court take judicial notice of Title 15 of the California Penal Code of Regulations § 3190 (2000), the Pleasant Valley State Prison Operations Procedure 47, as well as declarations and supporting documents from prison officials.  The court takes judicial notice of the California Penal Code of Regulations and Operations Procedure 47.  See, City of Sausalito v. O'Neill, 386 F. 3d 1186, 1224 n.2 (9th Cir. 2004) ("[a court] may take judicial notice of a record of a state agency not subject to reasonable dispute."). However, the court does not take judicial notice of the declarations from prison officials, however, the court did consider these documents in rendering this decision.

issue; 3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and 4) whether the prisoner has identified easy alternatives to the regulations which could be implemented at a minimal cost to legitimate penological objectives. The court will apply Turner to Operations Procedure 47 which is the institutional policy in effect at the time plaintiff's property was confiscated.

Operation Procedure 47 meets all of elements outlined in Turner. With regard to the first Turner factor, whether there is a valid, rational connection between the regulation and the interest used to justify it, regulation OP 47 has a logical relationship to the safety and security concerns the rule was designed to meet. Recording devices could lead inmates to tape conversations between each other or staff. This could result in physical altercations and violence and ultimately pose security threats in the prison. Accordingly, the ban on CD/radios/cassette players with recording capabilities has a logical connection to the legitimate interest of maintaining the safety and security of the institution.

In this case, plaintiff alleges that the recording device on the CD player/radio in question had already been dismantled before he arrived at PVSP. However, staff at PVSP are not electricians and could not confirm that it had been disabled. Moreover, if PVSP had taken the CD/radio/casette player apart, there was a possibility that plaintiff's property could have been damaged. Finally, even if the radio had been dismantled, it is possible that it could have been altered at a later time so that the recording device could be reactivated. Just because an inmate is able to possess an item at one institution does not mean that the same item would not pose a threat at another institution. Each penal institution has individualized concerns based on the population and has discretion to promulgate procedures tailored to meet the security needs of the individual facility.

Operations Procedure No. 47 also meets the second part of the Turner test which is whether the prisoner retains an alternative means of exercising the right at issue. Plaintiff is free to obtain a CD/radio/cassette player that does not have a recording device attached. If he had done so, he would have been able to possess it.

The court is required to be very deferential to the informed discretion of correctional

6

1  officers with regard to the third test under Turner, which is what impact allowing inmates to have
2  CD/radio/cassette players with recording devices will have on inmates, prison staff, and prison
3  resources. See, Turner, 482 U.S. at 90.   The security concerns outlined above in the first part of
4  the Turner analysis apply to the analysis of the third test.  This element of Turner is satisfied
5  based on the security concerns outlined above.
6       With regard to the fourth element of Turner, the plaintiff has not identified easy
7  alternatives to the regulations which could be implemented at a minimal cost to legitimate
8  penological objectives.   Plaintiff has not pointed to any remedy other than requesting that his
9  property be returned to him.  Accordingly, the Turner standard has been met with regard to
10 plaintiff's claim related to his radio.
11      Defendants contend that plaintiff's other property was confiscated because it had gang-
12 related associations or presented other safety and security concerns.  Plaintiff has not presented
13 any arguments to the contrary.  Additionally, the court notes that the confiscation of the
14 radio/CD/cassette player appears to be the primary basis for plaintiff's property claim in the
15 amended complaint. Given the foregoing, the court finds that Operations Procedure 47 is related
16 to legitimate penological objectives and no constitutional violation has occurred.  Accordingly,
17 defendants' motion to dismiss on this issue is granted.
18      3. Inmate Appeal
19      Defendants argue that plaintiff fails to state a claim regarding incidents arising out of his
20 inmate appeal.   The Due Process Clause protects prisoners from being deprived of liberty
21 without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a
22 cause of action for deprivation of due process, a plaintiff must first establish the existence of a
23 liberty interest for which the protection is sought.  "States may under certain circumstances create
24 liberty interests which are protected by theDue Process Clause."   Sandin v. Conner, 515 U.S.
25 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from
26 restraint which "imposes atypical and significant hardship on the inmate in relation to the
27 ordinary incidents of prison life." Sandin, 515 U.S. at 484.
28      "[A prison] grievance procedure is a procedural right only, it does not confer any

substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Defendants Allen and Comaites actions in responding to plaintiff's appeal, alone, cannot give rise to any claims for relief under section 1983. Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also be setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff has not shown any connection between defendants Allen and Comaites in his claim other than their participation in the grievance process. These defendants only became involved in the plaintiff's case after his property was already been confiscated and the alleged retaliation occurred. While plaintiff alleges that defendants Allen and Comaites engaged in a conspiracy with defendants Wallace and Corley, his conclusions are vague and conclusory.

Further, because defendants Allen and Comaites' involvement is limited to the inmate appeal which occurred after the alleged constitutional violation, plaintiff has not shown a causal connection between the alleged constitutional deprivations and the conduct of these defendants. Accordingly, plaintiff fails to state a claim upon which relief may be granted against these defendants and defendants' motion to dismiss on this issue is granted.

### 4. Supervisory Responsibility

Similarly, plaintiff has failed to state a claim against defendants Lewis and Terhune because he has failed to establish a causal connection linking them to the alleged violations. Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In this instance, plaintiff has not alleged any facts that support a claim that defendants Lewis and Terhune knew of the violations and failed to prevent them, or what specific policies, if any, were deficient resulting in any constitutional violations. Accordingly, the court finds that plaintiff's allegations fail to give rise to a claim for relief under section 1983 against these defendants.

### 5. Unauthorized Deprivation of Property

Defendants argue that any claims regarding missing, lost or destroyed property must fail because California provides a meaningful post-deprivation remedy. An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural

requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy as it does here, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Therefore, plaintiff fails to state a claim and defendants' motion with regard to this issue is granted.

      6. Plaintiff's Claims Against Defendants in their Official Capacities.

      In the motion to dismiss, defendants contend that plaintiff's allegations against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment bars damages actions against state officials in their official capacity. See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 30 (1991); Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.), cert. denied, 118 S. Ct. 168 (1997); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992). "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law. See Kentucky v. Graham, 473 U.S. 159, 165 (1988). Where plaintiff is seeking damages against a state official, such as in the instant action, this "necessarily implies" a personal-capacity suit because an official-capacity suit would be barred. See Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991). Accordingly, the court recommends that defendants' motion be granted with regard to this issue.

D.    Conclusion

      Based on the foregoing, the following is HEREBY ORDERED:

      1) Defendants' motion to dismiss on the basis that plaintiff did not exhaust his claims of

retaliation against defendants is GRANTED as to defendants Allen, Comaites, Lewis and Terhune only and DENIED as to defendant Corley;

2) Defendants' motion to dismiss on the basis that the operations procedure and regulation under which plaintiff's property was confiscated were reasonably related to legitimate penological interests and therefore is lawful is GRANTED;

3) Defendants' motion that plaintiff's claims regarding the inmate appeal process should be dismissed against defendants Terhune, Lewis, Comaites and Allen only is GRANTED, and DENIED as to defendant Corley;

4) Defendants' motion that plaintiff's claims regarding an unauthorized deprivation of property is not a violation of rights of the Fourteenth Amendment is GRANTED; and

5) Defendants' motion to dismiss claims for damages against defendants in their official capacity is GRANTED.

Accordingly, the only cognizable claim remaining in this case is against defendants Corley and Wallace for the alleged retaliation against plaintiff by failing to send home property that had been confiscated after plaintiff attempted to exercise his First Amendment right to file a grievance. Any claims for damages against these defendants are in their personal capacities.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991)

IT IS SO ORDERED.

Dated:   **June 26, 2007**            /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE